Marshall, O. J.
 

 This record puts in issue the validity of the city ordinance and challenges the power of the legislative branch of the city government to deny to aliens a license to operate pool and billiard tables. This ordinance was challenged in a former proceeding in this court, entitled
 
 State ex rel. Balli
 
 v. Carrel,
 
 Aud.,
 
 99 Ohio St., 285, 124 N. E., 129, in which this court held that it was not in conflict with any provision of the state or federal Constitution. In this proceeding it is sought to have the principle in that case overruled, and as grounds therefor it is urged that a recent case decided by the ¡Supreme Court of the United States is in conflict therewith, being the case of
 
 Asakura
 
 v.
 
 City of Seattle,
 
 265 U. S., 332, 44 S. Ct., 515, 68 L. Ed., 1041. Balli was a subject of Greece, and the license was denied to him because of his being an alien and a subject of Greece. The United States Supreme Court case, above referred to, involved a subject of Japan, and involved consideration of the treaty between the United States and Japan, proclaimed April 5, 1911 (37 U. S. Stat., 1504). That treaty contained a provision as follows:
 

 “The citizens or subjects of each of the high contracting parties shall have liberty to enter, travel and reside in the territories of the other to carry on trade, wholesale and retail, to own or lease and occupy houses, manufactories, warehouses and shops, to employ agents of their choice, * * * and generally to do anything incident to or neces
 
 *350
 
 sary for trade upon the same terms as native citizens or subjects * * *” Article I.
 

 Asakura was a pawnbroker, and the Supreme Court of the United States decided that the occupation of pawnbroker was carrying on “trade,” and that to deny the right to conduct his business as pawnbroker would be a denial of his right to carry on trade.
 

 It is claimed by counsel for the respondent that the case is materially different from the
 
 Asakuracase,
 
 because of relator being a subject of Great Britain. A careful examination and comparison of the two treaties discloses that, while the language is greatly different' in form, it is not materially different in substance. Both are commercial treaties, both are negotiated for the purpose of protecting merchants and traders who may occupy real estate for the purpose of carrying on trade and commerce. The treaty with Great Britain contains the following provision :
 

 “The inhabitants of the two countries, respectively, shall have liberty freely and securely to come with their ships and cargoes to all such places, ports, and rivers, in the territories aforesaid, to which other foreigners are permitted to come, to enter into the same, and to remain and reside in any parts of the said territories', respectively; also to hire and occupy houses and warehouses for the purposes of their commerce; and, generally, the merchants and traders of each nation, respectively, shall enjoy the most complete protection and security for their commerce, but subject always to the laws and statutes of the two countries, respectively.” (8 U. S. Stats, at L., 228, Article I.)
 

 It is claimed that the last clause thereof mater
 
 *351
 
 ially affects the situation. It would seem more reasonable to construe that clause as intending to refer only to such laws and statutes as do not unlawfully discriminate against aliens who are entitled to the general benefits of the treaty.
 

 The treaty does protect merchants and traders, and if Clarke is a trader he is entitled to protection as such. The word “trade” has a well-settled meaning in commerce, which has been adopted by courts generally as the business of the purchase and sale or exchange of goods, wares, and merchandise.
 
 In re Hudson River Elec. Power Co.
 
 (D. C.), 173 F., 934, 947;
 
 Jackson
 
 v.
 
 Town of Union,
 
 82 Conn., 266, 73 A., 773.
 

 In the case of
 
 May
 
 v.
 
 Sloan,
 
 101 U. S., 231, 25 L. Ed., 797, the Supreme Court of the United States has given a definition which must be accepted as conclusive in the instant case, inasmuch as a federal question is involved. At page 237 of the opinion we find the following:
 

 “The word ‘trade,’ in its broadest signification, includes, not only the business of exchanging commodities by barter, but the business of buying and selling for money, or commerce and traffic generally.”
 

 Measured by this definition, the operator of a pool room is not a trader, and it must therefore be concluded that this ordinance does not violate the terms of treaties between the United States and Great Britain. It remains to be determined whether the ordinance is a valid piece of legislation, and whether it violates the guaranty of the equal protection of the laws.
 

 This record raises no issue concerning the personal character of the relator. We are not called
 
 *352
 
 upon to determine whether the relator has personal qualities which deny him the right to operate a pool table in the city of Cincinnati, but, on the contrary, we are only called upon to determine whether the class to which he belongs may properly be excluded from such occupation. The answer contains allegations about the character of pool rooms and of the lack of knowledge on the part of aliens concerning our laws and institutions. It is not our purpose to consider these allegations as reflecting upon the character of this relator, but we cannot ignore those allegations in determining the validity of the municipal legislation. Whether or not those allegations correctly state the character of pool rooms and the state of mind of subjects of foreign countries, the motion for judgment upon the pleadings assumes the truth of all those allegations. This legislation is enacted in the exercise of the police power, and its validity is therefore a political question, except that this court may consider as a justiciable question whether it is a reasonable exercise of such power. Under the well-settled rules which have heretofore been declared by this court, we may not declare that legislation invalid unless it has. no reasonable relation to the public morals, public health, public order, and the peace and tranquility of the municipality. In view of the allegations of the answer, admitted as they are by the motion for judgment upon the pleadings, we are unable to And the legislation unreasonable. It has been decided in
 
 Schmidinger
 
 v.
 
 Chicago,
 
 226 U. S., 578, 33 g. Ct., 182, 57 L. Ed., 364, Ann. Cas., 1914B, 284, that a municipality may regulate one trade and not another, and that this
 
 *353
 
 is not forbidden by the prohibition of the Fourteenth Federal Amendment. That case is not strictly in point in deciding the instant ease, because the city of Cincinnati in its regulation of the business of operating a pool room has withheld rights from aliens which are granted to- citizens. The pertinent question therefore is whether, in any business other than trading, such discriminations are invalid as in violation of the Fourteenth Federal Amendment. It has been held by this court, in
 
 Bloomfield
 
 v.
 
 State,
 
 86 Ohio St., 253, 99 N. E., 309, 41 L. R. A., (N. S.), 726, Ann. Cas., 1913D, 629, that a license to traffic in intoxicating liquors might be withheld from aliens, though it would be granted to residents. In
 
 Heim
 
 v.
 
 McCall,
 
 239 U. S., 175, 36 S. Ct., 78, 60 L. Ed., 206, Ann. Cas., 1917B, 287, it was held that the labor law of 1909 of New York state (Laws 1909, c. 36 [Consol. Laws, c. 31]), which discriminated against aliens in the matter of employment on the public works, was not unconstitutional.
 

 Measured by these standards, and having in mind the admitted allegations of the answer, the conclusion must be reached that the discrimination in the instant case does not deny the -equal protection of the laws.
 

 The motion for judgment must therefore be re- ■ solved in favor of the respondent, and the petition dismissed at relator’s costs.
 

 Judgment for respondent.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.